State of Ronald Singletary v. City of Philadelphia. You may proceed. May it please the court, Craig Gottlieb representing the appellants, the police officers. I'd like to reserve three minutes for rebuttal. All right. That's a done. If time permits, I'd like to address the four issues in this appeal. Jurisdiction, reasonableness, proximate causation, and the lack of clearly established law. Before I embark on that logical sequence, I would like to just note that the strongest and simplest path to reversal is the lack of clearly established law. As I'll explain in more detail later, both the Supreme Court... Let's just go with jurisdiction because we're not, you know, we're not intent on reversing. We're not looking for the fastest path to reversal. We're looking for the right result. And it will be helpful if you, at least for me, it will be helpful if you tell us why the district court should be bound by what the parties say the record says. If the district court reads the record and doesn't think it says what the parties agree it says. Well, I think the answer to that was in York v. Williams where the court addressed that issue. And so to take a step back, the baseline rule is that the set of facts identified by the district court, this court is bound by the set of facts identified by the district court. And we're with you on that. We understand and we believe you understand that in a rare case the record may be so clear that the district court's discussion of the record is completely wrong that we wouldn't take that to be the case. So why is this that rare case? Is it really enough that the parties, that Mr. Singletary's estate didn't push back on your client's statement of what they believe undisputed facts are? I believe they did not, Your Honor. And I guess the key... So does that make the district court's determination that there are disputed facts incorrect, blatantly and demonstrably incorrect? And keep your voice up, please. Yes. The district court was blatantly, the district court's finding was blatantly and demonstrably false. Only because it ignored the concession. If there wasn't the concession, these facts are soup, right? If there wasn't the concession, these facts are kind of soup. They're all over the place. Different officers saying different things, the timing being in different increments. But in the middle of this soup, we have a concession that there was a lunge. And what you're saying is that because there was an agreement on that concession, we have to accept that. And we can't look at the district court's more holistic view of all of these facts. Correct, Your Honor. And it's more than simply a concession. It's a theory of the case. If you look at plaintiff's complaint, paragraph 49, they claim that there was a lunging in their complaint. So this really is that rare case. Plaintiffs themselves pursued the lunging theory. And then the district court changed his mind on that. But a concession would be enough. But this is more than a concession. Judicial admission is what you're basically saying. I don't even know if that's strong enough because it's their theory. But it's at least a judicial admission. So it's in the complaint and it's in the statement of material facts. In your view, that makes it off limits for the district court to question. There's no other way to support your point. It's off limits. Correct. And, Your Honor, I also disagree with the soup characterization. I think most of the, quote, unquote, disputed facts aren't material. And the material one is the lunging. Hold on just a second when you say they're not material. The question isn't whether all of the things are material or not. It's that you do have very different stories. That's why the one thing that struck me was the district court judge said it looked like they might have tried to coordinate their stories. But if they did, they did the worst possible job of it because they were telling very different stories, including who heard what, who said what, when they said it, what he did, whether or not they were confident about having him contained in the room or not. Yeah, I don't think soup's a bad description at all. There's a lot of different stuff and a lot of different views. And in and of itself, that's not a troubling thing because people perceive things differently, right? You get the Rochamont effect and the same experience, but people with different perceptions of it. So the fact that it's a little soupy doesn't bother me. What does hold me up is your assertion that York tells us a concession is enough. We couldn't look past that. And the district court couldn't look past it. So since you led with York, why don't you tell us what in York would bind us and the district court to a concession, ill-advised or not, made by the plaintiffs? There is a phrase in York that says most importantly, and if you look up the phrase most importantly in York, you'll see most importantly was the concession. That's the language in York that I would rely most heavily upon. And I do think that this case is stronger than York because of the complaint factor. So let's just tease this out. If all of the evidence before the district court contradicted the concession, that would be an instance, don't you think, where the district court could override the concession? It says I've got this world of evidence that contradicts that. Not necessarily I've got a world of evidence, some of which is consistent, some of which is inconsistent. That may be what we have here. But if all of the evidence or the material evidence contradicted the concession, then surely a district court would have the ability to override a concession, right? I assume that's probably correct if the evidence were that strong. And so what your point is really, I think, is not that concessions are absolute, but that what it takes to overcome a concession has to be something where there's overwhelming contrary evidence, not just inconsistent evidence. That's the value of a concession amidst a sea of inconsistent evidence. You say at least we can agree on this. I think that's probably correct, yes. And I think what makes this case jurisdictional is that factor that you just described, plus the allegations in Plaintiff's Own Complaint. I'm not sure a district court could also overcome the allegations in Plaintiff's Complaint and the concession. But what we haven't talked about— So you've made allusions a couple times in your briefing to the allegations in the complaint. Yes. Why don't you remind us of what is the specific allegation that you say means, aha, they've admitted it in their pleading. In fact, they have embraced it as the theory of their case. Be specific. Paragraph 49. Okay. Of the complaint. And where will we find that in the record here? So the complaint is—starts—the removal petition, which contains the complaint, starts on page 349 of the record. And the complaint's—the specific allegation is on— So you're at JA349? I'm sorry. The complaint starts on page 367. Paragraph 49 is on page 370— 372, I think. 372. Yeah, that's not the— There's— 48, I apologize. Three what? Paragraph 48. 48, okay. And that appears to be on page 372 of the appendix. Now, it says, Officer Navarro—it looks like a mistake there in Aveto, or I've said it wrong— Officer Navarro has stated that the officers ordered Singletary to drop the knife. That's the introductory language. When I read this before and read your brief, I thought, well, they're not saying that that's what—they're saying that's what the officer said. Why would we read this as an embracing of that and not read that as they are—they're representing that that's what Officer Navarro said? That would be an odd— Why would that be odd when it starts with, Officer Navarro has stated? Right, but this is their complaint. I don't know why they'd be pleading this if this wasn't their theory. If you look at the next sentence in that paragraph, it then says, he refused, took a step toward Officer Navarro, and lunged with the knife. If they're disagreeing with that, that would be an odd statement in their complaint. The actual next sentence is, Officer Aveto alleges that he then deployed his taser, etc. He then walked toward Officer Aveto and lunged with his knife. In context, can that not fairly be read to be saying, this is what they're saying? Not that they're embracing it, not that they're admitting it, but that they're saying that's what they say. Yes, but then when you couple that with the fact that they then do admit it, which they do in paragraphs 45 and 52 in response to the statement of material facts, we're not coming very close to an admission, if not an admission. I mean, you have this paragraph, which I believe would be an odd paragraph for them to put in if they're not pursuing it, but then you couple that with their response to the statement of material facts. Plus, Your Honor, one thing that we haven't talked about yet is, what exactly is the contradictory evidence? We don't have any. What is the evidence that the district court is pointing to that contradicts the lunging? I think it says that there's a very short period of time, there's evidence that there was a very short period of time, and about six or seven actions are seemingly occurred in a very short period of time, and that struck the district court as implausible. There can't be a tasing, a falling back, a raising of the knife, a lunge, all this in a three-second time period, as I think what the district court's relying on. Is that wrong? That's probably fair, but I don't think there's any dispute that at the deployment of the taser and the deployment of the gun that Mr. Singletary was two feet away. I don't think that's disputed. Well, there might be a dispute about him having a knife at all, because Officer Lando, I'm not sure how you say the gentleman's name. How do you say his name? Do you know? I believe it's Lando. Okay. Officer Lando testifies that he hears, he's not in the room, but he hears, let me see your hands, nothing about a knife, not drop the knife or put down the weapon or anything. It's let me see your hands. Those are the words he believes he hears or words to that effect. The district court paid attention to that, right? Yes. Okay. So if we're supposed to be paying attention to what the district court's assessment of the record is, why wouldn't we say, well, that's enough to create a material dispute of fact, that the guy have a knife at all, let alone did he lunge with it? Your Honor, I don't think the phrase let me see your hands is enough to exclude the prospect of a knife. Let's imagine your side of the story, your client's side of the story. He's got a knife. It's in front of him. One officer says he's holding it one way. Another officer says he's holding it a different way. But the two officers say he's got a knife and he lunges with it. Okay? There's an officer outside who you would expect if somebody had a knife, you would not hear them say, show me your hands. He's shown his hands, and one of the hands has a knife in it. Show me your hands is an odd statement to make if the person's showing you a hand with a knife in it. So I just don't find it that difficult to get my head around why Judge Young would look at that record and say, you know what? It could be it looks like there's a kind of a difference here, a dispute, or it's not clear what's going on. Well, Your Honor, I guess, again, we need to view this in the context of there was a specific concession on this point. I mean, I think this was a concession of what the police said. I mean, how do you get beyond that? Well, there was a concession that the concession in the statement of material facts wasn't simply as to what the police said. It was as to what happened. So what you're saying is if I understand your position, there is paragraph 45 of the defendant's statement of material facts. It says Singletary was cursing, refused to comply with the officer's commands. He then lunged at the officers with the knife. That is met with an admission. Correct. Then paragraph 52, you say, says there were only seconds between when Singletary got back up, lunged at the officers, and shot Shutey fired. That is also admitted. And what you're saying is that it was an error for the district court to look past those admissions. And I think the questions that the panel's giving you is why was that an error when there's all of this other evidence there that suggests that maybe those admissions should be disregarded? The only evidence that I've heard is the statement about the hands. And respectfully, Your Honor, I'm not sure the statement about the hands can overcome the admission. That's really the point. It's just it's simply not that strong. I mean, if it could, then almost anything, then district court could look at almost anything and overcome an admission and then defeat interlocutory appeal of qualified immunity denials and send everything to trial. I'm not sure I understand your question. I think I want to say yes to that. I suspect you do. Your position, in essence, is it's got to be something pretty strong to overcome an admission or a concession. And this isn't pretty strong. And your foundation for that is York. And you said that your foundation for that in York is the phrase most important. There's a concession. Right. OK. Right. Now, just one other point on the hands, Your Honor. What Officer Lorando ultimately said was he said the phrase, quote, something about hands. That was the phrase. That's how he ended the phrase. Something like that. Something about hands. So I think it'd be a pretty big jump from show me your hands to drop that knife out of your hands. I mean, that's doesn't sound logical to me that there's a confusion there. But let's shift gears for just a moment because you're past your time. And we've been asking a lot of questions. There's one legal point I'd like your position on. If we thought, because the court identified two material issues of fact that it said were in dispute. But if we thought that one of them was a material issue in dispute, is one alone enough? I mean, if we thought one of them was enough, would we have to look at the other? Or is that all by itself one material dispute of fact sufficient for us to say we don't have jurisdiction? We don't have jurisdiction to look at the other thing. Or we don't even need to look at the other thing because we don't have jurisdiction in the case. Your Honor, we're on the same page. Besides the lunging, what's the other factor that you're? Well, I thought that the district court had taken the position or said that there's some dispute here about, and maybe it's not a question of fact, maybe it should be treated as a question of law, about whether there was a provocation. Whether going into the room at all created the circumstance that led to the confrontation and the shooting, right? Am I mistaken that that's a point that you two have been fighting over? We do fight over that point. I don't view that as a question of fact. I mean, I think the facts are. Your question of law, was there a provocation by entering the room? Or did the entry approximately cause the eventual use of excessive force? Approximately cause a question of fact? It certainly can be, but it doesn't have to be if all of the relevant facts are undisputed. I mean, so I think the primary dispute is as to the lunging. And I would agree that if the court finds that it doesn't have jurisdiction to consider the lunging issue, then at least as to Officer Schutte, the case would, that would, there would be a problem for us as to Officer Schutte. But if the court finds that there is a lunging, then the court needs to go back in time and consider whether the allegedly unreasonable entry approximately caused the. Why? Why is that necessary? Approximate cause is usually a link between the offensive conduct, the breach of duty, in this case it would be a breach of constitutional or federal statutory duty, it happens to be a constitutional duty in this case, and the injury. The knocking in the door, no one claims, is a constitutional injury. The constitutional injury in this case is a shooting. And there's no doubt that the shooting approximately caused injury. But the knocking in the door, in my view, precedes any constitutional injury. Is there a claim that kicking down the door was a constitutional claim? And if it isn't, then why are we even focused on approximate cause? I agree with everything you just said, Your Honor. I think my adversaries would characterize it differently. They would say not that the knocking down the door was a constitutional injury, but it was part of the totality of the circumstances of the eventual constitutional injury. I would say that that is not constitutionally allowed to go back in time like that, but that is their position and why the entry is relevant. Honestly, that's where the parties have focused most of their debate. All right. You reserved time for rebuttal. Did you have anything else to add, Judge Phipps? No, thank you. Okay. We'll have you back on rebuttal, Mr. Gottlieb. Thank you very much. Thank you. And then we'll hear from counsel for the appellees. Good morning, Your Honors. I'm Chris Marcos. I represent the appellees in this case. Obviously, jurisdiction here is a threshold issue. Without jurisdiction, there's no need to address approximate cause, qualified immunity, clearly established law. Go right at the question, why the admission? And in light of the admission, why wouldn't we say, as Mr. Gottlieb suggests, look, you know, you said he lunged. That ought to be enough. The cases and the rules of civil procedure are clear that the district court is welcome to examine the record before it, not simply what the parties tell it to look at. So that would extend beyond what the parties represent to the court that the record says or what they purported to say. What's the effect of the admission? Do we ignore it? Does it matter? Why don't you take that up and speak to the impact of City of York and the way we should think about this. So this court should ignore it because the district court ignored it. The district court was within its right to do so. Under York, the admission of that plaintiff was part of the record that quite clearly contradicted what the district court had found, that the district court had found that maybe these individual officers that she had sued were personally responsible for handcuffing her arm and causing her injuries. And she said, well, no, I didn't say that. Right. But the record in the court said, this is the money phrase that Mr. Gottlieb likes so well, first and most importantly, in William's summary judgment briefing, she conceded she cannot establish that any officers were personally involved in the violation she alleges. And he says, hey, that's our case. First and most importantly, Mr. Singletary's estate admitted that Mr. Singletary lunged at the police officers with a knife. That's admitted by them in a filing with the court. That ought to be game up. So in light of this language in York, explain to us why it isn't. Right. So right before that, the court says the record quite clearly contradicts this finding that there is a disputed issue of material fact. Does it have to quite clearly contradict? We're getting into the realm I think Judge Phipps was talking about with Mr. Gottlieb. Is it, you know, perhaps we wouldn't be having this discussion if the rest of the record said things like, he didn't have a knife, but we were afraid he did. But that's not what the rest of the record says. The rest of the record says, he's got a knife, and the area of disagreement is, or what was troubling apparently to Judge Young was, there's an officer outside the room that says, there was not a peep about a knife. There was something about, show me your hands. That's the, in other words, the gap isn't as extreme as, nobody said it even though we admitted it. You had multiple parties say he had a knife. That coupled with the admission, does that make a difference? How do we look at this as a legal matter in assessing what the district court did? Okay, so I think that, if I understand your question, if the record said everybody, there was no evidence in the record to draw any inference that the knife was not being wielded, that might be different. But that's not what the record here says. Right? What the direction from Williams versus York is that the district court's finding has to be blatantly, demonstrably false. And what the parties say the record said doesn't change what the record says. Right? But, no, I actually don't read that paragraph of York that way. I think that York says once the parties agree on what the record says, that first line of that paragraph speaks of contradictory evidence. And so in order for that admission to be kind of overcome, the record must be contradictory, not merely inconsistent with. And so it strikes me that there's a difference of degree. I've previously characterized a bit of the record as soup. I think there's a lot going on here. It makes sense to me that absent the admission that this case would go to trial. It makes sense to me. There's just a dispute of fact, and how you resolve those facts one way or another would determine not just liability, but qualified immunity. Hence, qualified immunity can't be decided at summary judgment. But amidst this soup, there's one point of clarity. And it's a really material point of clarity. And that's that there was a lunge. And so then the question is, does the soup, is it strong enough to contradict that point of clarity? And at least that's how I understand the law on York. And so I guess that gives you two options. One, you could say I'm misreading York and that contradiction is not the standard. Or two, that I'm misreading the record and that it's not soup and that you can satisfy contradiction. You're an advocate. You may want to challenge both. But I just wanted to tell you how I see it and see what you have to say to both, either. I suppose none, too, but you're here as an advocate. So it will be one or two, right? I'm hesitant to say you're wrong about your own case. No, no, no. You're an advocate. I mean, the fact that it's soup is where you get the contradiction, right? Like the record is not clear. In York, the record was clear that these officers had no role to play in handcuffing this woman and causing any injury. That was clear. So it clearly contradicted the finding. Here you have a record that says you don't have to find that there is this lunch because of the, you know. That only the police witnesses could testify as to whether there was a knife. And so that any so-called concession by the plaintiffs could only be based upon what the police had said in the first place. And that if the judge was concerned about the credibility of the police, that had a repercussion effect on what was actually seen in the room since the only living people who could testify to it were the police. Right, Judge Roth. Well, the cases in the district court noted that it is especially incumbent in an excessive force death case to, I'll say, take things with a grain of salt, that the only testimony that you're going to have is the officer-defendant testimony. Here you have an additional non-defendant officer. However, there's no, you know, safe harbor. There's no witness to the, in this case and in many of these death cases, there's no other witness to the incident other than the defendants. Yeah. And that's not insignificant, but in your answer to Judge Phipps' question, I want to make sure I understood it. It sounds like what you're saying is that in the way Judge Phipps put it to you, he got the contradiction piece reversed, that it's not a matter of the record having to clearly contradict the concession. It's a matter of the record having to clearly contradict the district court's determination of what the record is. Do you understand? I think I do. Well, I'm trying to actually understand what your argument is. I'm not trying to make your argument for you. I'm trying to understand what you said. I think that's what you said, but I'm not sure that's what you said. So why don't you tell me what your argument is. My argument is, I think that your characterization is pretty close. William says, look at the district court's finding, then look at the record. Does the record contradict the findings? And does the record clearly, quite clearly contradict the district court's finding? That's the language from Scott that was quoted in York. The record in this case does not contradict the district court's finding in this case. So let me just ask you, let me put the question this way, then. If a district court improperly, so we're positing that a district court improperly ignored an admission, then its finding of a dispute of fact would be blatantly and demonstrably incorrect, right? That much we know. I don't know. I mean, what does the record say in a hypothetical situation? Because if the record still supports the district court's finding, then Johnson says we're not going to look past that. So even if the district court makes an error and improperly disregards an admission, then its finding still might not be clearly and demonstrably false because we will look to the rest of the record? Well, you don't have to as an appellate court. I'm trying to understand the bounds within your asking me this question. And if the district court said nothing of the admission but found some contradictory fact in the record, it's not incumbent on the district court to do so. Nobody is saying that. But, I mean, I guess what I'm getting at is district courts almost uniformly throughout the country as far as I can tell under usually like a Rule 56.1, a statement of material facts and a reply. It's from your judgment. And I guess what I'm looking at is those really aren't binding on anyone. Those are just a guide for the district court. The admission doesn't mean anything. The district court is free to use its own assessment of what it looks at the record and kind of take those admissions as maybe persuasive but not controlling. Well, I think so. I mean, there is no basis to say that a district court must do that, though. Right? There's no basis to say that a district court can take these as guideposts, but then its job is to scour the record and try to figure out for itself what's going on here. But that really has a transformative effect on the role of judge. The judge becomes now more in the way of investigatory fact finder, not determining which side of an adjudication based on admissions is entitled to judgment as a matter of law. It's almost like the judge is in a bench trial mode, not a summary judgment mode. I'm not suggesting that a court must do that. But I am saying that it's not prohibited from doing so. Well, if we turn now to this second issue that you two are fighting about, which is the proximate cause issue, explain to us why that even matters in light of Sheehan and language from the Supreme Court that indicates going into a room is not a constitutional violation. It might be ill-advised. It might be against a police policy. Maybe the policy tells you you're supposed to wait. It doesn't rise to the level of a constitutional violation. If that's true, why are we even talking about it in the case? That was Judge Phipps' last question to Mr. Gottlieb, which left him flummoxed because he liked it. I want to say yes, he said. And he should have said yes because it's good for his side. But it's not so good for your side. And yet the question stands. Why should we even be talking about it? Okay, so assuming that you were to find that there was nothing impermissible or unreasonable about going into the bedroom, assuming that, then, right, it's a different kind of a calculation. It simply was the shooting justified or not. Well, you don't have to assume we'd find it. You have to address the argument based on Sheehan. Because the Supreme Court says in that case, and says it pretty bluntly if I remember right, quote, nor is there any doubt that had Sheehan not been disabled, and that's not a factor here, Mr. Singletary wasn't disabled, the officers could have opened her door the second time without violating any constitutional rights. They say it certainly wasn't a violation to go in the first time. And to go back the second time wouldn't even have a problem but for her disability. Here, there's no second time. It's just the first time. Sheehan seems to say, very plainly, it's not a, it might be a bad idea, but it's not a constitutional violation. What are we supposed to do with that language in light of the allegations you're making? I don't believe that Sheehan says that there is a, no constitutional barrier to go into a locked room. Okay? Because what Sheehan said was, first, the first entry was warranted because police are permitted to enter a room without a warrant in order to provide emergency care. And the second time they opened the door was part and parcel of the first. You're right. I'm sorry. Maybe as a foundation we should have just laid this. This isn't, these officers weren't busting into Mr. Singletary's home at random. They were there enforcing a protection from abuse order. He had been removed from the house once already that evening, been told not to return. He did return, barricaded himself in, and so they were enforcing an order. So they, I mean, I never read your contention to be, the police had no right to be in that house at all. Did I misunderstand the position you were taking? Well, break it down a little bit. They were let into the house by one of the occupants. But he's in a locked bedroom of his own, like his living quarters. He's in violation of a PFA, which tells him he can't be within the residence, right? So they're there lawfully, whether the other occupant let him in or not, they had a lawful reason to go into the home, correct? Into the home. Okay. So then the question is, since they're lawfully in the home executing a PFA order, is it your legal position that it rose to the level of a constitutional violation to go into the room? And if that's your position, how do you justify it in light of Sheehan? Okay. First, yes, I think that there is a constitutional implication going into this locked bedroom. How do you justify it in light of Sheehan? Sheehan said, okay, let's assume this woman was not mentally disturbed. They could go into the room because they were called there by her caseworker. There's this crisis going on, and she needs help. And they're permitted to go into the room to provide that help. How's that constitutionally different from you're in the house because there's a person there who's not mentally disturbed and, quote, needing help, unquote, but potentially violent and violating a court order, and he's to be removed. I mean, in both instances, the police are acting on something they're lawfully entitled, indeed, enjoined to do. They're there to uphold the law. I'm just not following you. I'm not following your distinction. Are you saying that the police can – it's not a constitutional violation if you're in helper mode, but it becomes a constitutional violation if you're in enforcement mode. Is that the distinction you're drawing? I think there's always a constitutional implication, but then there are a number of exceptions to – under the Fourth Amendment that permits certain entries. But, I mean, I think just – I know you're over time, but if you'll – maybe I can ask this question. If they enter the room and it's unconstitutional, right, that's a violation. That's an illegal search, right, under the Fourth Amendment. Not necessarily. The case in the brief, Moraes, and that cites the state of Smith v. Morasco, says that the show of force to enter a room, to storm into a room, is a seizure, can be analyzed as a seizure under the Fourth Amendment. And does proximate cause cease or get broken, the chain, causal link, get broken by a lunge? It could, but not necessarily. Okay. You want – and that's a jury question. Exactly. Yeah. Okay. Thanks. Thanks very much, Mr. Marcos. Thank you. We'll hear from Mr. Gottlieb on Republican. And, Mr. Gottlieb, before you launch, I'll launch. I would like you to answer Judge Roth's question to Mr. Marcos, which I take to be, in essence, the Abraham v. Rasso case, which says the victim of deadly – when the victim of deadly force is unable to testify, courts should be cautious on summary judgment to ensure the officer is not taking advantage of the fact that the witness most likely to contradict his story, the person shot dead, is unable to testify. That's our precedent. Does that have weight here when we're considering how the district court viewed the record? Well, it does have weight. I mean, that's – this court's obviously bound by Rasso, but after Rasso came Lamont, and Lamont said that the standard of summary judgment is still the standard of summary judgment. So those standards remain the same, even though the other person that could testify is no longer around. And along those lines, Your Honor, I wanted to rehash a couple points on jurisdiction, if I may. And I did want to go back to that paragraph 48 of the complaint. And you are right that, of course, it characterizes what Officer Novato said. But there's no attempt to then recast what happened. The argument isn't Officer Novato said there was lunging, but there was no lunging. That was their theory. How does that become their theory? I mean, I know you'd like it to be their theory because it helps your position, and maybe it's inartfully drawn because they should have said, but we reject it. But merely stating the other side's position is not an adoption of it, is it? And specifically attributing it to them, not saying this is what happened, but saying Novato said this, Novato said that. Well, I mean, if you look at that, first of all, if you look at that paragraph, it doesn't actually read exactly like that. It starts out, Novato said this, but then it just, it's more declarative. In the middle of it, it repeats it and says, Novato said that. Well, it goes back and forth. But, I mean, doesn't that help your case? I mean, if there's five sentences in that paragraph, and the first one qualifies it by saying, Novato said, the second one has no qualifier, and then the third one says, Novato alleges, and you say the theory of the case depends on the second sentence, it seems like your strongest point is that sentence isn't qualified. The plaintiffs, when they wrote the complaint, knew how to qualify sentences by what was attributed only to Novato. They did it twice, and in the second sentence they didn't. Isn't that stronger than saying the whole thing is just one and the same with just this is what Novato said? I'm going to say yes to this one, Your Honor. Yes. Good choice. Good choice. And just to answer your question, Judge Jordan, their theory was he came at you with a knife. We told you he was going to come at you with a knife. That's their theory of foreseeability. That's why it's consistent with their theory as well. That's why everybody agreed until the district court wrote his opinion that there was a knife. And just on that point, Your Honor, you were asking me questions before that were calling into question not whether or not there was a lunge, but whether there was a knife at all. But I truly don't think there's any dispute apart from what the judge created after the fact that there was a knife. In the judge's decision itself, the judge says, as they were traveling up the steps, the judge says, as Officer Schutte and Novato ascended the stairs, they saw Singletary enter a bedroom with a knife. So I think everybody understood that there was a knife, and maybe there was. When you say everybody understood there was a knife, when I read the record, and I might have misread it, I understood that it was Officer Gesson and Officer Schutte. A couple of the officers said, we saw him going up the stairs and thought he had a knife. Am I wrong about that? I could be. I'm not sure I can say with respect to each officer whether they knew or thought. I mean, I do have that one line from the district court. That's the district court. And that's what makes this a little bit challenging, Mr. Gottlieb, because, you know, you refer to summary judgment standard, and it doesn't change, but Rule 56 says the moving party must show, that means, I think, convince the court, that there is no genuine issue, no genuine dispute of any material fact, and then says the court needs to consider the cited material, but it may consider other materials in the record. That's 56C3. So everybody agrees he's entitled to view the whole record, right? Yes. And everybody agrees that the burden is on your clients, the moving parties, to convince the district court that there is no dispute of material fact, right? That's where the burden lies on summary judgment. Yes. So if there's a failure to carry that burden, if the district court is left unconvinced after reviewing the whole record, doesn't Johnson v. Jones tell us, hey, you guys in the Court of Appeals, stay in your lane. You don't even have a jurisdiction to talk about this. It does, unless it's blatantly and demonstrably false. Okay. We go back to there. And, Your Honor, the last thing I wanted to mention was, back on the knives, in the concessions, all four officers were told that he had knives. That is undisputed. I agree with that. She told them as they were going in, hey, stab somebody. I think he's got a knife. Some people have. You don't have to persuade the members of this court that this kind of second-guessing of what officers have to do on a scene is a challenging thing. We're not in the moment and in a life-threatening circumstance. We understand that. Nothing we're talking about here should imply that we think the officers did something wrong, because that's not even what we're thinking about or considering. The only thing we're asking is, did the district court get it wrong in looking at this record and saying there's a material dispute of fact? That's it. That's the only thing we're dealing with. So I think what this case comes down to after this lengthy conversation is whether he had a knife or not. Well, whether he lunged with a knife or not. He was two feet away, Your Honor. I think lunging versus not lunging when you're two feet away is less material. He was two feet away. But the only evidence that I've heard that has to contradict both the complaint and the concession is, this is Lorando's testimony, something hands, let me see your hands, something about hands. That's it. That's the entirety of the contradictory testimony, and I don't think that overcomes the concession. Okay. Are you concerned at all that the district court seemed to review the qualified immunity issue for the officers collectively rather than separately, one by one? Well, I think generally you're supposed to view it individually. I think that in terms of entry into the room, that was perhaps a collective decision. But in terms of the actual lunging, if there was not a lunging, then I think it was incumbent upon the district court to look at just the firing, the deployment of the weapon itself. But we think there was a lunging, in which case then that sort of falls out of the case because the shooting would be justified to respond to the lunging. Okay. Thank you, Mr. Cuffman. And thank you, Mr. Marcus. We have the case under advisement. Appreciate your argument today.